Argued and submitted January 5, affirmed June 3, reconsideration denied July 24, petition for review denied August 24, 1987 (304 Or 55)

In the Matter of the Compensation of
Kevin L. Farrell, Claimant.

GORDON et al,
*Petitioners,*

*v.*

FARRELL et al,
*Respondents.*

(WCB 84-08997; CA A38881)

737 P2d 654

Quintin B. Estell, Salem, argued the cause and filed the brief for petitioners.

Rick W. Roll, Astoria, argued the cause for respondent Farrell. With him on the brief was Roll, Westmoreland & Lavis, P.C., Astoria.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent SAIF Corporation.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Employers seek review of a Workers' Compensation Board order holding that respondent Farrell (claimant) was a subject worker at the time of his injury. We affirm.

Employers are husband and wife and partners in the ownership of a five-unit rental complex and a farm on which their home is located.[1] Claimant and his wife began renting one of the units in January, 1984, for $200 per month. Shortly thereafter, the parties agreed that the Farrells would manage the units for a rent deduction of $55 a month plus $5 for each additional hour over 11 hours per month worked by claimant or his wife. Claimant began doing farm work for the Gordons for $5 per hour, and his wife did some housework for the Gordons. Claimant usually called George Gordon in the evening to see if work was available the next day. He averaged about $320 a month. Employers deducted the rent from that amount as well as taxes, Social Security and a Workers' Compensation deduction.[2]

By mid-April, 1984, most of the farm work was done. On the evening of May 7, 1984, claimant called George to inquire about the availability of work for the following day. He informed George that he was looking for work to do, because he had a bill to pay. George told him that there was no farm work but Helen had some painting that she wanted done at the house. Claimant agreed to do that. He went to work at the home the next morning and injured himself when he fell off a ladder.

■ Employers argue that claimant was a nonsubject worker under ORS 656.027, which provides in part:

"All workers are subject to ORS 656.001 to 656.794 except those nonsubject workers described in the following subsections:

"* * * * *

"(2) A worker employed to do gardening, maintenance, repair, remodeling or similar work in or about the private home of the person employing the worker.

---

[1] Employers were found to be non-complying employers. ORS 656.017.

[2] Employers claim that Workers' Compensation insurance was not obtained because of a mistake by their accountant.

"(3)   A worker whose employment is casual and either:

"(a)   The employment is not in the course of the trade, business or profession of the employer; or

"(b)   The employment is in the course of the trade, business or profession of a nonsubject employer.

"For the purposes of this subsection, 'casual' refers only to employment where the work in any 30-day period, without regard to the number of workers employed, involves a total labor cost of less than $200."

They concede that, if claimant had been injured while doing farm work or work at the rental units, he would be a subject employe. They argue, however, that his employment was casual and that the work at the house was outside the course of the trade, business or profession of his employer.

We addressed a similar issue in *Anfilofieff v. SAIF,* 52 Or App 127, 627 P2d 1274 (1981), where the claimant worked as a carpenter on a housing project. He was injured while nailing metal siding on a bathhouse located at his employer's home. We held that the claimant was a subject worker:

" 'The second category of troublesome cases [as to coverage] is that which involves employees who go from one class of work to another. Here, as in the other specific exemptions, it is impractical to construe the act in such a way that employees and employers dart in and out of coverage with every momentary change in activity. The great majority of decisions, therefore, attempt to classify the overall nature of the claimant's duties, disregarding temporary departures from that class of duties even if the injury occurs during one of the departures. * * *'

"* * * * *

"The rationale underlying this rule is that employer has the power to enlarge the scope of an employee's employment by assigning specific tasks. Once that authority is exercised, the employee has no practical choice but to perform as requested. The employee must either comply or face dismissal. To require the employee to decide whether to comply, but forfeit compensation, or refuse, and face dismissal, is impractical and unfair." 52 Or App at 132. (Citation omitted.)

The overall nature of claimant's duties was to perform miscellaneous tasks for employers at the farm and rental units. The work at the house may have been a temporary

departure from claimant's usual duties. However, applying the rationale of *Anfilofieff,* employers did have the authority to expand the scope of his duties, and if claimant wished to continue the work relationship, which he needed to do to make his rent payments, he had a strong incentive to do any work available. In the past, claimant had performed whatever tasks employer had needed done. If he had not done the work at the house, he risked not being given whatever work employers might later have available.

■     Employers also argue that claimant had to prove that they had labor costs of $200 or more during the 30-day period immediately before the injury. ORS 656.027(3). They rely on *Konell v. Konell,* 48 Or App 551, 617 P2d 313 (1980), *rev den* 290 Or 449 (1981), where there was insufficient evidence to show that the claimant would have earned enough money to result in the employers' costs meeting the statutory minimum. The evidence in that case did not show that the employer had *ever* met the statutory minimum. Here, the referee found that claimant averaged about $320 per month between the end of January and mid-April; therefore, the statutory requirement was met.

Affirmed.